651 So.2d 463 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
Charles STRACENER, Defendant-Appellant.
No. CR94-998.
Court of Appeal of Louisiana, Third Circuit.
March 1, 1995.
*464 David Wayne Burton, De Ridder, for State of Louisiana.
David L. Wallace, De Ridder, for Charles Stracener.
Before YELVERTON, THIBODEAUX and DECUIR, JJ.
DECUIR, Judge.
Defendant, Charles Stracener, was charged with one count of second degree murder, a violation of La.R.S. 14:30.1. Defendant pled not guilty, and not guilty by reason of insanity to the charge, and was subsequently adjudged sane at the time of the offense. After a trial by jury, the defendant was found guilty and sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. Defendant now appeals his conviction alleging three assignments of error.

FACTS
On January 9, 1994, in DeRidder, at approximately 3:00 a.m., Laurie Ann Stracener, separated spouse of defendant Charles Stracener, was sleeping in her home. Laurie was living in the home with their three small children, defendant's brothers, Chris and James Stracener, and defendant's mother, Lera Stracener. Defendant forced his way into the home, called out Laurie Ann's name and shot her in the left armpit area as she came into the kitchen. Defendant did not flee but laid down in one of the rooms. The police arrived and arrested defendant.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, we have reviewed the record for errors patent. Our review of the record reveals one error patent. La.Code Crim.P. art. 880 provides that when imposing a sentence the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of the sentence. The record indicates the trial court did not do so.

ASSIGNMENT OF ERROR NO. 1
By defendant's first assignment of error, he contends the trial court erred by admitting inculpatory statements of the defendant when he was questioned by police while in custody before he was given his Miranda warning. Officer Ricky Johnson of the DeRidder Police Department testified that when he first arrived at the scene, he and Officer Richard entered the house in the living room, saw no one and proceeded to the kitchen. In the kitchen they saw a white female laying on the floor and a white male kneeling beside her. Johnson said he pulled up the white male, saw that the man had no weapon, and handed him to Officer Pine who handcuffed him. Johnson went with Richard to a bedroom in the northwest corner of the house where they found the defendant laying on the bed with three small children around him. Johnson said he did not know who the male was at the time, nor did he know who had done the shooting. Johnson and Richard ordered the defendant off the bed and onto the floor where he was handcuffed. At that *465 point, the officers did not know who had shot Laurie Ann or who the people were, and were trying to cuff everyone for their own security. While Richard was handcuffing the defendant, Johnson asked him what had happened. The defendant responded, "She's been telling lies on me and I shot her." At this point, Johnson advised the defendant not to make any more statements until he had been advised of his rights. Johnson said when he asked, "What happened?," he was not questioning the defendant as to whether he was the shooter because no one was a suspect at that point, and he was just investigating what had happened. At this point, Officer Pine, who had been in the kitchen with Chris Stracener, walked up behind Johnson and said, "He's the shooter." Johnson said he immediately read defendant his Miranda rights and the defendant indicated he understood those rights.
During the trial, defense counsel objected to this testimony saying defendant's response was an inculpatory statement made while he was in custody before he had been advised of his rights. Therefore, the statement was not free and voluntary. The trial judge allowed the statement in evidence stating the requirements of Miranda do not apply to a detention status and only apply once the particular individual is determined to be in custody. The trial judge found defendant's statement to be a pre-custodial statement made during the initial investigation and so not subject to Miranda. He noted defendant was not a suspect because the police officer did not know who anyone was. The judge explained that as soon as defendant made the statement he became the principal suspect and at that point the police officer did have a duty to read defendant his Miranda rights, which the police officer did.
For an inculpatory statement to be admissible into evidence, the State must show that it was freely and voluntarily given without influence of fear, duress, intimidation, menace, or promises. La.R.S. 15:451; State v. Perkins, 540 So.2d 556 (La.App. 3d Cir.1989). The state must show that an accused who makes an inculpatory statement during custodial interrogation was first advised of his Miranda rights. State v. Washington, 540 So.2d 502 (La.App. 1st Cir.1989). The issue is whether custodial interrogation had begun when defendant stated he shot the victim. We find it had not. Officer Johnson's question, "What happened?" came as a general inquiry. Officer Richard handcuffed defendant as a precautionary measure to secure the place. In a similar case, State v. King, 563 So.2d 449 (La.App. 1st Cir.1990), a police officer entered the house, saw the victim's body on the floor, proceeded to the defendant's bedroom, and asked him what had happened. Defendant's reply was that he had pulled a gun and pointed it, the victim hit it and it was discharged. King, 563 So.2d at 453-454. The officer immediately informed defendant of his Miranda rights. In finding the inculpatory statement admissible at trial, the court explained:
Concerning the initial inculpatory statement made to Deputy Lea, there is no doubt that the defendant had not been advised of his Miranda rights before making this statement. However, a single, general inquiry made to the defendant at his home during an investigation, and prior to his arrest, does not constitute custodial interrogation. State v. Anderson, 332 So.2d 452 (La.1976). Miranda warnings are not essential prerequisites to non-custodial, general, on-the-scene interrogation to determine facts relating to whether or not a crime has been committed, or by whom, at least absent a showing that the questioning is past such investigatory stage. State v. Brown, 340 So.2d 1306 (La.1976). See also State v. Hodges, 349 So.2d 250 (La.1977), cert. denied, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978).
The case sub judice closely parallels King. Thus, Johnson's question upon entering the room did not constitute custodial interrogation and defendant's statement in response is admissible without prior Miranda rights.

ASSIGNMENT OF ERROR NO. 2
This assignment of error was abandoned by the defendant/appellant and thus will not be reviewed. Uniform Rules, Courts of Appeal, Rule 2-12.4.

*466 ASSIGNMENT OF ERROR NO. 3

By defendant's third assignment of error, he contends the trial court erred when it failed to grant a mistrial because of the state's failure to provide exculpatory information pursuant to discovery. Specifically, defendant objects to the prosecution's introduction of statements given by Patsy Robinson and her mother Bobbie Thompson, neighbors of Lera Stracener. Officer Smith had extracted written statements from both, but these statements had not been produced during discovery. Robinson and Thompson testified as defense witnesses that after the shooting, defendant's mother, Lera Stracener, went over to Robinson and Thompson's home. Lera told her neighbors that Chris Stracener had shot Laurie Ann. Both Robinson and Thompson testified Lera immediately corrected herself and said Chris did not shoot Laurie Ann, Charles did. Defendant objects to these statements as well as to Thompson's statement that she heard a woman's voice call someone a "son-of-a-bitch" two times. Defendant complains that the first knowledge he had of written statements given by Thompson and Robinson to Officer Jimmy Smith of the DeRidder City Police Department was when the state crossed Thompson. He says the statements are exculpatory evidence that should have been produced during open file discovery. Defendant did not enter a contemporaneous objection when he first found out about the statements during the trial, but moved for a mistrial the morning of the next day, May 13, 1994. The motion was heard by the judge outside the hearing of the jury before closing arguments. At the hearing, both sides agreed the statements were not included in the state's file. The state said they were not aware of the statements taken by the detective until the night after the trial began. The trial judge reviewed the motion and refused to grant a mistrial.
Under La.Code Crim.P. art. 841, an irregularity or error cannot be appealed after a verdict unless it was objected to at the time of the occurrence. In State v. Bennett, 591 So.2d 1193 (La.App. 1st Cir.1991), writ denied, 594 So.2d 1315 (La.1992), the defendant, in one of his assignments of error, objected to the testimony of two of the state's witnesses saying that he had not been provided with any information about them during open file discovery and so had not had the opportunity to evaluate the testimony and prepare his defense. The defendant had not lodged a contemporaneous objection to the testimony during the trial and, based on La.Code Crim.P. art. 841, the court refused to review the assignment. Bennett, 591 So.2d at 1197.
The purpose of the contemporaneous objection requirement and the prohibition against raising unobjected to errors on appeal is to require the objecting party to call the alleged error to the trial court's attention at a time when it can be corrected. State v. Williams, 524 So.2d 746, 747 (ftnt. 4) (La. 1988). Accordingly, we decline to review this assignment.

CONCLUSION
Defendant's conviction is affirmed. Defendant's sentence is hereby amended to reflect that defendant is given credit for time served prior to sentencing. The case is remanded and the district court is ordered to amend the commitment and minute entry to reflect that defendant is given credit for time served.
AFFIRMED AS AMENDED AND REMANDED.