654 So.2d 451 (1995)
STATE of Louisiana
v.
British Lamont WALKER.
No. 94 KA 0587.
Court of Appeal of Louisiana, First Circuit.
April 7, 1995.
*452 Jason Lyons, Houma, for State of La.
Margaret Sollars and William H. Dunckelman, Houma, for defendant/appellant, British Lamont Walker.
Before LeBLANC, PITCHER and FITZSIMMONS, JJ.
LeBLANC, Judge.
Defendant, British Lamont Walker, was charged by bill of information with distribution of cocaine, a violation of La.R.S. 40:967(A)(1). He pled not guilty and, after trial by jury, was convicted as charged. Subsequently, the state charged him as a habitual offender. See La.R.S. 15:529.1. After a hearing, the trial court found defendant to be a second felony habitual offender and sentenced him to serve a term of fifty years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Defendant appealed, urging five assignments of error. Assignment of error number two was abandoned in defendant's brief. Assignment of error number five (excessive sentence) and our consideration of patent sentencing error are addressed in connection with defendant's separate appeal of his habitual offender adjudication, also rendered this date under 94 KA 0588.

FACTS
Prior to being commissioned as a sheriff's deputy, Frank Washington worked under contract for the Terrebonne Parish Narcotics Strike Force making undercover purchases of controlled dangerous substances. On the night of January 14, 1993, Washington and an informant drove to the Sparks Trailer Park in Terrebonne Parish to purchase cocaine. During the trial, the identity of the informant was revealed when Carl Harris, testifying as a defense witness, testified on cross-examination that he was the informant who assisted Washington during the offense. Washington drove the car, and Harris rode as the passenger. When they arrived at 8:40 p.m., Washington drove to the back of the trailer park, where they found defendant. Defendant started walking toward the passenger side of the vehicle but, after Harris motioned to him, defendant went to the driver's side where Washington told him he wanted to buy two rocks of cocaine. Defendant replied, "Well I know you're cool, because you dealt with my brother." Defendant then opened his hand, revealing six or seven rocks. Washington removed two of the rocks and gave defendant forty dollars. A forensic scientist later tested the rocks and determined they contained cocaine.

FAILURE TO GIVE NOTICE OF INTENT TO INTRODUCE INCULPATORY STATEMENT
In assignment of error number one, defendant claims the court abused its discretion by not decreeing that evidence of in court and out of court identifications would be excluded because the state failed to comply with the trial court's order requiring the state to provide defendant with notice of its intent to introduce inculpatory statements. On appeal, defendant relies on La.C.Cr.P. art. 768 *453 and specifically argues that the testimony of Frank Washington repeating defendant's statement, "Well I know you're cool, because you dealt with my brother," should have been stricken because the state failed to provide the defense with notice of its intent to introduce the statement.
Article 768 of the Louisiana Code of Criminal Procedure provides that "[u]nless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement." In his discovery motion, defendant asked to be informed of the existence of any oral statements made by him which the state intended to introduce. The court issued a routine order instructing the state to answer the discovery motion. In response, the state offered and defendant accepted "open file" discovery. Because the contents of the state's file are not apparent from the record, there is no indication the state notified defendant about the existence of the oral statement. See State v. Scoby, 536 So.2d 615, 620 (La.App. 1st Cir.1988), writ denied, 540 So.2d 339 (La.1989). However, notice of an intent to offer an accused's inculpatory statement is not required under article 768 when the statement sought to be admitted forms part of the res gestae. State v. Smith, 444 So.2d 262, 264 (La.App. 1st Cir.1983) (citing State v. Barnes, 414 So.2d 711 (La. 1982)). Thus, even if we assume the statement was inculpatory, the state's failure to provide the defense with notice of its intent to introduce the statement did not violate article 768. However, under article 716(B) of the Code of Criminal Procedure, a defendant is entitled to discover the existence, although not the contents, of res gestae statements. State v. Jones, 408 So.2d 1285, 1294 (La. 1982). It is within a trial court's discretion to disallow the introduction of an oral statement (which was not provided to the defense as required by the discovery statutes) in accordance with the discovery sanctions provided for in La.C.Cr.P. art. 729.5. A showing of prejudice by virtue of the trial court's adverse ruling must be made before a reversal of the conviction would be in order. State v. Whitaker, 489 So.2d 998, 1002-03 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La. 1986).
Although it is apparent defendant was not prejudiced by the state's failure to notify him about the existence of the statement, we choose to reject the assignment because of defense counsel's failure to timely object at trial. See State v. Willis, 438 So.2d 605, 613 (La.App. 3d Cir.1983). No contemporaneous objection was made to the introduction of the statement during the testimony of Washington. Only after both the state and the defense rested did defense counsel complain by making an oral motion to strike the testimony. Irregularities or errors cannot be availed of on appeal if they are not objected to at the time of occurrence. La. C.Cr.P. art. 841; Smith, 444 So.2d at 264.
Moreover, when defense counsel voiced the objection, she asked that the testimony be stricken. Although the trial court apparently concluded that the state was not required to provide the defense with notice, it offered to instruct the jury to disregard the testimony out of an abundance of caution. Defense counsel rejected this offer, despite the court in essence offering to do what counsel had just requested.
Accordingly, this assignment lacks merit.

DENIAL OF MOTION FOR NEW TRIAL
In assignment of error number three, defendant argues the court erred when it denied his motion for new trial because the cumulative effect of the errors urged on appeal warrant the granting of a new trial. We have carefully reviewed each assignment of error and have found no reversible error. Furthermore, the combined effect of the incidences complained of did not deprive defendant of the right to a fair trial. There is no cumulative prejudicial impact nor is there a denial of due process. See State v. Copeland, 530 So.2d 526, 544-45 (La.1988); State v. Graham, 422 So.2d 123, 137 (La.1982).
The assignment lacks merit.

DENIAL OF MOTION FOR POSTVERDICT JUDGMENT OF ACQUITTAL
In assignment of error number four, defendant asserts the court erred when it denied *454 his motion for postverdict judgment of acquittal. Pointing to discrepancies in the identifications and to inconsistencies in the testimony, he contends the evidence was insufficient to support the conviction.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). Where the key issue raised by the defense is defendant's identification as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984).
During the trial, the defense did not dispute that defendant was present in a group of people at the location where the drug transaction took place. However, the defense maintained that defendant was not the person who sold the cocaine to Washington. In an effort to attack Washington's testimony that the lighting was sufficient for him to identify the person who sold the cocaine, defendant's wife and cousin testified that the area of the trailer park where the transaction occurred was very dark until the recent installation of a light.
Despite defense efforts to attack Washington's credibility, the state presented sufficient evidence to establish defendant's identity. Although Washington did not know defendant before the offense, he had seen defendant earlier that day when defendant ran out of gas while driving a black Cutlass. At the time of the offense, defendant was standing alone at the rear of the Cutlass. During the transaction, defendant bent down to Washington's open car window. According to Washington, there was a light in the back of the trailer park and there was enough light for him to see defendant's facial features. During the transaction, defendant was about a foot away. Before identifying defendant in court as being the person who sold the cocaine, Washington described the person's clothing and physical features.[1] Washington indicated that he remembered defendant from the night of the offense and that he had no doubt about the identification.
Called as a defense witness, Carl Harris testified on cross-examination that he was the confidential informant who assisted Washington during the undercover operation. Because his sister lived in the trailer park, Harris was disturbed by the operations of neighborhood drug dealers and volunteered to assist law enforcement officers in the area as a paid informant. Harris grew up with defendant and attended the same high school. Harris acknowledged it was dark during the transaction, but he said there was enough light to observe defendant during the transaction. Harris identified defendant in court and said he had no doubt about the identification.
The jury's decision to accept the testimony of Washington and Harris was rational and will not be overturned by this court. See State v. Mussall, 523 So.2d 1305, 1310 (La. 1988). The assignment of error is without merit.
In connection with this assignment of error, defendant also attacks the photographic display which was showed to Washington about three weeks after the offense. The nine photographs included in the display were of the people named by Washington and the informant as being the people who had sold the drugs to Washington during the entire undercover operation. (No photographs of people who were not suspected of having sold cocaine were included.) After viewing the photographs, Washington identified the name of each person and identified the particular offense. Prior to trial, defendant filed a motion to suppress the photographs and references to the pictures on the ground the photographs were not available for defendant to inspect. During the hearing held on the motion, the pictures were *455 located and defendant withdrew his objection.
On appeal, defendant appears to argue the lineup was suggestive and, therefore, invalid. However, defendant did not present this issue before the trial court. A defendant who fails to file a motion to suppress an identification, and who fails to object at trial to the admission of the identification testimony, waives the right to assert the error on appeal. State v. Brooks, 633 So.2d 659, 663 (La.App. 1st Cir.1993), writ denied, 94-0308 (La. 5/20/94), 637 So.2d 475. See also La. C.Cr.P. arts. 703 & 841. Thus, we will not consider the merits of defendant's arguments attacking the suggestiveness of the photographic display.
For the reasons assigned, defendant's conviction is affirmed.
CONVICTION AFFIRMED.
NOTES
[1] Washington described the man as having a missing front tooth. At the conclusion of its case, the state had defendant display his teeth to the jury. However, the record does not reflect the appearance of defendant's teeth at that time.